UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JOSEPH G. STANDISH,

                                  Plaintiff,            **Hon. Hugh B. Scott**


                                                       **17CV980V**

                    v.                                 **Report**
                                                       **&**
                                                       **Recommendation**


VILLAGE OF ALBION, NEW YORK
VILLAGE OF ALBION POLICE
DEPARTMENT,
and RANDALL BOWER, SHERIFF OF
ORLEANS COUNTY,

                                  Defendants.
_____

        This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(C)

(Docket No. 6).  The instant matter before the Court is a motion of defendant Sheriff Randall

Bower's ("Sheriff Bower[1]" or "defendant") (Docket No. 22) for summary judgment dismissing

the case against him.  In support of this motion, defendant submits a Statement of Undisputed

Facts, affidavit with exhibits, and Memorandum of Law (Docket No. 22).  Responses to this

motion were due by July 31, 2019 (cf. Docket No. 23), with reply due by August 9, 2019

(Docket No. 25).  Plaintiff responded with his Opposing Statement of Facts (Docket No. 28), his

Memorandum of Law (Docket No. 27), and affidavits and exhibits (Docket No. 26).  Sheriff

_____

        [1]In his reply, defendant refers to himself as "Sheriff Bowers," Docket No. 29, Def. Reply
Memo.

Bower duly replied (Docket No. 29) and the motion was deemed submitted (without oral argument) on August 9, 2019.

## BACKGROUND

This is a civil rights action following the arrest by Albion Police Department and detention of plaintiff in the Orleans County Jail (Docket No. 1, Notice of Removal, Ex. A, Compl.). Plaintiff commenced this action in New York State Supreme Court and amended his Complaint (id., Exs. A, H). In the Amended Complaint, plaintiff alleged (among other claims) false arrest, excessive use of force by Albion police officers, and Sheriff Bower's failure to treat plaintiff's injuries following the use of force (id., Ex. H). In the Fifth Cause of Action, plaintiff alleges that he was beaten on Friday, September 16, 2016, by Albion police officers and taken to the Orleans County Jail (id., ¶¶ 44, 45). Deputies had plaintiff photographed due to the injuries from his arrest and the use of force applied therein but did not immediately transfer plaintiff to a hospital (id. ¶ 46). Sheriff Bower held plaintiff in the county jail for approximately 45 days, plaintiff claims defendant denied plaintiff access to care and treatment at a hospital while his physical and mental health condition deteriorated (id. ¶¶ 47, 48). Plaintiff claims he suffered from severe and serious injuries to his head, face, shoulders, upper body, arms, abdomen, knees, legs, suffering concussion, internal bleeding, and other injuries from the untreated use of force during his arrest (id. ¶ 50). Plaintiff alleges in the Seventh Cause of Action that the failure to provide medical care to him at that time was willful and wanton (id. ¶¶ 76, 70-75). Plaintiff claims that this was a deprivation of his civil rights under 42 U.S.C. § 1983 in violation of plaintiff's Fourth, Fifth, Eighth, and Fourteenth Amendment rights (id. ¶¶ 77, 81). These deficiencies arose from the "systematic deficiencies in policies, procedures, customs, and

practices" of defendant (id. ¶ 80). Plaintiff alleges that Sheriff Bower and his agents, deputies, and employees are jointly and severally liable for their acts and omissions (id. ¶ 82), although those employees are not named as defendants. Plaintiff claims compensatory and punitive damages (id. ¶¶ 83, 84).

Defendants Village of Albion and its police department removed this case to this Court (Docket No. 1). Defendant Sheriff Bower stipulated to removal (Docket No. 3). The Village and police department answered (Docket No. 4), as did Sheriff Bower (Docket No. 5). Following referral of this matter to the undersigned (Docket No. 6), this Court entered a Scheduling Order (Docket No. 15). As amended (Docket No. 20), dispositive motions were due by May 23, 2019 (id.). Sheriff Bower filed his timely motion for summary judgment (Docket No. 22); the Village of Albion and its police department (as well as plaintiff) did not.

*Sheriff Bower's Summary Judgment Motion (Docket No. 22)*

According to the material facts (that is those facts that resolve claims or defenses, see 10A Charles Wright, Arthur Miller & Mary Kay Kane, Federal Practice and Procedure § 2725.1, at 429-30 (2016)) undisputed by the parties (Docket No. 22, Def. Statement; Docket No. 28, Pl. Opposing Statement), on September 15, 2016, plaintiff was subdued and arrested (Docket No. 22, Def. Statement ¶¶ 6, 7). After plaintiff's arrest, an EMT examined plaintiff who determined that there was no emergency and plaintiff said he did not need hospitalization (id. ¶ 8). The Albion Police Department brought plaintiff to the Orleans County Jail after his arraignment (id. ¶ 9). Defendant contends that plaintiff did not request medical treatment upon admission to the jail (id. ¶ 11) but he argues that he advised jail officers that he was beaten and experienced back pain, shoulder and wrist pain, with nausea and vomiting (Docket No. 28, Pl.

3

Opposing Statement ¶ 11).  Defendant contends that plaintiff underwent a medical screening that did not reveal any injuries (Docket No. 22, Def. Statement ¶ 12; id., Jail Superintendent Scott Wilson Aff. Ex. B), but plaintiff argues that this screening was "perfunctory at best" (Docket No. 28, Pl. Opposing Statement ¶ 12).

The medical screening form noted that plaintiff did not appear to look sick and had a note that plaintiff was "placed on medical watch until seen/cleared by medical" for "drug issues, bipolar" (Docket No. 22, Wilson Aff. Ex. B at 1), also noting that plaintiff had no "obvious signs of injury, pain, or need for immediate medical attention" (id. at 2).  According to that screening form, plaintiff appeared to ambulate without assistance (id. at 2).  The form indicated that plaintiff did not "sustain any injuries during the arrest" (id.).

Defendant contends that the Orleans County Jail has a "sick-call slip" process for detainees to seek medical attention, arguing that plaintiff utilized this system "throughout his incarceration" (Docket No. 22, Def. Statement ¶ 17).  Plaintiff argues that the only relevant reference to sick-call slip for early morning of October 15, 2016, which indicates complaints about lower left abdominal pain, lower back pain, dark urine color, jaundice, and yellowed skin, but without information about which officer received this slip and the time it was submitted (Docket No. 28, Pl. Opposing Statement ¶ 17).  Defendant lists slips plaintiff submitted on September 22, 23, October 2, and 12, 2016 (Docket No. 22, Def. Statement ¶ 17).

At 1 o'clock in the morning, Sunday, October 16, 2016, plaintiff stated he did not feel well and was throwing up and he was given a sick-call slip (id. ¶¶ 18, 19).  Since that was a Sunday, there was no nurse on duty that day, but correctional staff had discretion to seek medical assistance if necessary (id. ¶ 19).  Plaintiff denies that staff had such discretion; plaintiff would

not be seen on a Sunday slip until Monday and that correctional staff lacked a published policy for treating weekend medical needs (Docket No. 28, Pl. Opposing Statement ¶ 19). Plaintiff contends that he was in agony in the early morning hours of Saturday, October 15, 2016, and experienced that pain for 72 hours until he was hospitalized (Docket No. 26, Pl. Aff. ¶ 19). He concludes that his period of pain and suffering could have been eliminated if he was hospitalized sooner (id. ¶ 20; see also id. ¶ 21 (plaintiff alleges present pain in the right side of his abdomen and he fatigued easily after his incarceration)). On the next morning, Monday, October 17, 2016, Deputy Capurso noted plaintiff's yellow skin and summoned the nurse to examine plaintiff (Docket No. 22, Def. Statement ¶ 20) and the nurse directed plaintiff be taken to the hospital for evaluation for jaundice (id. ¶ 21). Plaintiff, however, denies that Capurso called for the nurse but plaintiff was speaking with the nurse (Docket No. 28, Pl. Opposing Statement ¶ 20).

Defendant noted inmate visits for plaintiff prior to October 15, 2016, and on October 16, 2016, did not indicate any medical issues and jail records do not have any complaints from these visitors or plaintiff's attorneys about plaintiff's physical condition (Docket No. 22, Def. Statement ¶ 22). Plaintiff counters that his direct complaints regarding his medical care went unanswered (Docket No. 28, Pl. Opposing Statement ¶ 22). Plaintiff's visit on October 16, 2016, was preserved on jail surveillance footage of the visiting room (Docket No. 22, Def. Statement ¶ 23; id., Wilson Aff. Ex. L). Defendant contends that this video did not show any signs for need of any medical assistance (Docket No. 22, Def. Statement ¶ 23). Plaintiff argues that the video shows that he was "listless with his head in his hand, or supporting himself leaning on a chair or table throughout the visit" (Docket No. 28, Pl. Opposing Statement ¶ 23). He also states that his

booking photo a month before showed this jaundice (id. ¶ 24; cf. Docket No. 22, Wilson Aff., Ex. A).

This Court viewed the video in question. First, neither party clearly identified plaintiff (as distinct from other detainees) so that his demeanor and posture could be evaluated (but cf. Docket No. 22, Wilson Aff. ¶ 15, Ex. A, plaintiff's booking photograph). The video (Docket No. 22, Wilson Aff. Ex. L) is in two frames, viewing from two different corners in the room. The left frame (showing the detainee's profile) had at 12:57 pm a detainee greeting three visitors and sitting at the chair closest to that left side camera; that detainee appears to be plaintiff. This video does show that detainee resting his arms on the table, but that is the posture of the other detainees in that visiting room.

Sheriff Bower argues that plaintiff fails to establish Bower's personal involvement or interaction with jail detainees in general, or with plaintiff in particular, therefore plaintiff fails to state a claim (Docket No. 22, Def. Memo. at 2-5; id., Def. Statement ¶ 33). Plaintiff admits that he had no direct contact with Sheriff Bower, but that the sheriff was responsible for the training of jail health care staff on weekends (Docket No. 26, Pl. Aff. ¶¶ 2-3). Plaintiff argues that under New York State Correction Law § 500-c, Sheriff Bower was charged with receiving and safely keeping detainees (Docket No. 28, Pl. Opposing Statement ¶ 33).

Sheriff Bower next argues that plaintiff did not allege an unconstitutional custom, policy, or practice to establish municipal liability (Docket No. 22, Def. Memo. at 5-7). Defendant lists the policies for admission and medical treatment of detainees in the Orleans County Jail (Docket No. 22, Def. Statement ¶ 34). Plaintiff counters that the Jail lacked a policy for providing

medical care on weekends when the nurse was not present (Docket No. 28, Pl. Opposing Statement ¶ 34).

The Sheriff contends that plaintiff was not deprived of a constitutional right under the Due Process Clause of the Fourteenth Amendment, the alleged failure to treat injuries from plaintiff's arrest (Docket No. 22, Def. Memo. at 7-9).  Applying the Eighth Amendment deliberate indifference standard (id.), Sheriff Bower argues that there was no deliberate indifference to plaintiff's medical needs (id. at 8-9).  Sheriff Bower produced Dr. Mark Levstik (Chief of the Comprehensive Liver Center and Medical Director of the Liver Transplant at the University of Rochester Medical Center) who reviewed plaintiff's medical record at Orleans County Jail and the doctor opined that plaintiff's medical care before October 17, 2016, was reasonable (id. at 9; id., Dr. Levstik Aff.)

Plaintiff responds that Sheriff Bower can be held liable for negligence despite not having any personal involvement with plaintiff (Docket No. 27, Pl. Memo. at 2-7).  Plaintiff contends that Sheriff Bower is liable for the acts of his deputies (id. at 2).

Plaintiff concedes that the Amended Complaint does not allege a claim against Orleans County (id. at 7-8).

Sheriff Bower replies that plaintiff's factual disputes with defendant's Statement of Facts do not have impact on the summary judgment motion and lack evidentiary support (Docket No. 29, Def. Reply Memo. at 1).  Plaintiff still fails to allege Sheriff Bower's personal involvement or a policy that violated plaintiff's rights (id. at 2-5).  He also contends that he is entitled to qualified immunity (id. at 10-11).  He also denies that he can be held liable under a respondeat superior theory for deputies failure to detect and seek treatment for plaintiff's

hepatitis C (id. at 11).  Furthermore, Dr. Levstik's affidavit was not contested, therefore, there is

no evidence of negligence or malpractice in treatment of plaintiff's hepatitis (id. at 12).

## DISCUSSION

I.      Applicable Standards

A.      Summary Judgment

Summary judgment is appropriate only if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits show that there is no genuine

issue as to any material fact and that the moving party is entitled to a judgment as a matter of

law.  Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003); Fed. R. Civ. P. 56(a).  The party

seeking summary judgment has the burden to demonstrate that no genuine issue of material fact

exists, Crawford v. Franklin Credit Mgmt. Corp., 758 F.3d 473, 486 (2d Cir. 2014).  In

determining whether a genuine issue of material fact exists, a court must examine the evidence in

the light most favorable to, and draw all inferences in favor of, the non-movant.  Ford, supra,

316 F.3d at 354.  "A dispute regarding a material fact is genuine 'if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party.'"  Lazard Freres & Co. v.

Protective Life Ins. Co., 108 F.3d 1531, 1535 (2d Cir.) (quoting Anderson v. Liberty Lobby,

477 U.S. 242, 248 (1986)), cert. denied, 522 U.S. 864 (1997).  While the moving party must

demonstrate the absence of any genuine factual dispute, Celotex Corp. v. Catrett, 477 U.S. 317,

323 (1986), the party against whom summary judgment is sought, however, "must do more than

simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving

party must come forward with specific facts showing that there is a genuine issue for trial."

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (emphasis in

original removed); <u>McCarthy v. American Intern. Group, Inc.</u>, 283 F.3d 121, 124 (2d Cir. 2002); <u>Marvel Characters v. Simon</u>, 310 F.3d 280, 285-86 (2d Cir. 2002). The opponent to summary judgment may argue that he cannot respond to the motion where it shows, by affidavit, "that, for specified reasons, it cannot present facts essential to justify its opposition," Fed. R. Civ. P. 56(d).

The Local Civil Rules of this Court require that movant and opponent each submit "a separate, short, and concise" statement of material facts, and if movant fails to submit such a statement it may be grounds for denying the motion, W.D.N.Y. Loc. Civ. R. 56(a)(1), (2) (effective Jan. 1, 2011). The movant is to submit facts in which there is no genuine issue, <u>id.</u> R. 56(a)(1), while the opponent submits an opposing statement of material facts as to which it is contended that there exists a genuine issue to be tried, <u>id.</u> R. 56(a)(2). Each numbered paragraph in the movant's statement will be deemed admitted unless specifically controverted by a correspondingly numbered paragraph in the opponent's statement, <u>id.</u> Each statement of material fact is to contain citations to admissible evidence to support the factual statements and all cited authority is to be separately submitted as an appendix to that statement, <u>id.</u> R. 56(a)(3).

B.      Civil Rights Liability

Under 42 U.S.C. § 1983, a defendant is liable either for his personal involvement in the alleged violation of plaintiff's civil rights or in establishing a policy or custom, implemented by others, that leads to the violation. To state a § 1983 claim, plaintiff must allege the manner in which defendant was personally involved in depriving plaintiff of his rights, <u>see</u> <u>Colon v. Coughlin</u>, 58 F.3d 865, 873 (2d Cir. 1995); <u>Wright v. Smith</u>, 21 F.3d 496, 501 (2d Cir. 1994); <u>Al-Jundi v. Estate of Rockefeller</u>, 885 F.2d 1060, 1065 (2d Cir. 1989); <u>Jacoby v. Conway</u>, No. 10CV920, 2013 U.S. Dist. LEXIS 51780, at *18 (W.D.N.Y. Apr. 10, 2013) (Scott, Mag. J.).

"Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983," <u>Moffitt v. Town of Brookfield</u>, 950 F.2d 880, 885 (2d Cir. 1991); <u>see</u> <u>Wright</u>, <u>supra</u>, 21 F.3d at 501; <u>Colon</u>, <u>supra</u>, 58 F.3d at 873; <u>Provost v. City of Newburgh</u>, 262 F.3d 146, 154 (2d Cir. 2001).  There are several ways to allege personal involvement:  plaintiff could claim that defendant had direct participation in the event; plaintiff could claim that defendant failed to remedy the violation after it was noticed; defendant created the policy which lead to the violation or allowed the policy to continue; defendant was grossly negligent in managing subordinates which caused the violation to occur; or defendant exhibited gross negligence or deliberate indifference to plaintiff's rights by failing to act on information indicating that unconstitutional acts were taking place,  <u>Wright</u>, <u>supra</u>, 21 F.3d at 501; <u>Jacoby</u>, <u>supra</u>, 2013 U.S. Dist. LEXIS 51780, at *18; <u>see</u> <u>Wright</u>, <u>supra</u>, 21 F.3d at 501.

  C.  Deliberate Indifference

  Under the Eighth Amendment for convicted prisoners, in order to state a claim for inadequate medical treatment, plaintiff must allege that defendants acted with "deliberate indifference to [a] serious medical need," <u>LaGrange v. Ryan</u>, 142 F. Supp. 2d 287, 293 (N.D.N.Y. 2001); <u>see</u> <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976); <u>see also</u> <u>Gregg v. Georgia</u>, 428 U.S. 153, 173 (1976) (the Eighth Amendment prohibits infliction of "cruel and unusual punishments" which includes punishments that "involve the unnecessary and wanton infliction of pain.") (citations omitted); <u>Hathaway v. Coughlin</u>, 37 F.3d 63, 66 (2d Cir. 1994), <u>cert. denied sub nom.</u> <u>Foote v. Hathaway</u>, 513 U.S. 1154 (1995).

  "To establish an unconstitutional denial of medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'" <u>Hathaway</u>, <u>supra</u>, 37 F.3d at 66 (quoting

Estelle, supra, 429 U.S. at 104). Mere negligent treatment or malpractice upon a suspect, however, does not create an Eighth Amendment violation, see Corby v. Conboy, 457 F.2d 251, 254 (2d Cir. 1972). This claim has two elements, an objective component, that the deprivation must be sufficiently serious; and a subjective component, that the defendant official must act with sufficiently culpable state of mind. Hathaway, supra, 37 F.3d at 66. "Sufficiently serious" for the objective component contemplates "a condition of urgency, one that may produce death, degeneration, or extreme pain." Nance v. Kelly, 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J., dissenting) (quoted in Hathaway, supra, 37 F.3d at 66). Plaintiff needs to prove that defendants wantonly intended to cause him to suffer. Wilson v. Seiter, 501 U.S. 294, 302 (1991).

The applicable standard for a jail detainee's medical treatment, however, is from the Due Process Clause of the Fourteenth Amendment (see Docket No. 27, Pl. Memo. at 8), see Bell v. Wolfish, 441 U.S. 520, 535 (1979) (under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt).

Until recently in this Circuit, the deliberate indifference Eighth Amendment standard was similar for detention under the Due Process Clause of the Fourteenth Amendment, e.g., Caiozzo v. Koreman, 581 F.3d 63, 72 (2d Cir. 2009). Deliberate indifference to a detainee's medical needs is construed under the Fourteenth Amendment because there is no punishment in which the Eighth Amendment would be invoked, Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017); Swinton v. Livingston County, No. 15CV53, 2018 U.S. Dist. LEXIS 166718, at *31-32 (W.D.N.Y. Sept. 27, 2018) (Foschio, Mag. J.) (Report & Rec.). "A detainee's rights are 'at least as great as the Eighth Amendment protections available to a convicted prisoner,'" Darnell, supra, 849 F.3d at 29 (quoting City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983));

Swinton, supra, 2018 U.S. Dist. LEXIS 166718, at *32.  Showing deliberate indifference is met by plaintiff "showing that the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process," with that element being the same as the Eighth Amendment medical indifference standard, Swinton, supra, at *32, 33 (quoting Darnell, supra, 849 F.3d at 29).

After Kingsley v. Hendrickson, 576 U.S. ____, 135 S.Ct. 2466 (2015), regarding excessive force claims, the Second Circuit in Darnell recognizes that as for the subjective element for deliberate indifference in Eighth Amendment cases does not apply in jail cases under the Due Process Clause.  The court stated that

> "to establish a claim for deliberate indifference to conditions of confinement
> under the Due Process Clause of the Fourteenth Amendment, the pretrial detainee
> must prove that the defendant-official acted intentionally to impose the alleged
> condition, or recklessly failed to act with reasonable care to mitigate the risk that
> the condition posed to the pretrial detainee even though the defendant-official
> knew, or should have known, that the condition posed an excessive risk to health
> or safety.  In other words, the 'subjective prong' (or 'mens rea prong') of a
> deliberate indifference claim is defined objectively,"

Darnell, supra, 849 F.3d at 34-35.  The court in Darnell concluded that, since Kingsley, "there is no basis for the reasoning" in Caiozzo v. Koreman, 581 F.3d 63, 72 (2d Cir. 2009),

> "that the subjective intent requirement for deliberate indifference claims under the
> Eighth Amendment, as articulated in Farmer v. [Brennan, 511 U.S. 825 (1994)],
> must apply to deliberate indifference claims under the Fourteenth Amendment.
> Caiozzo is thus overruled to the extent that it determined that the standard for
> deliberate indifference is the same under the Fourteenth Amendment as it is under
> the Eighth Amendment,"

Darnell, supra, 849 F.3d at 34-35.  As later described, "a plaintiff can prove deliberate indifference by showing that the defendant official 'recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-

official knew, or should have known, that the condition posed an excessive risk to [the plaintiff's] health or safety,'" Charles v. Orange County, 925 F.3d 73, 87 (2d Cir. 2019) (quoting Darnell, supra, 849 F.3d at 35) (emphasis that was added removed).  Although Darnell was a conditions of confinement case, the Second Circuit later applied the deliberate indifference standard to the provision of medical care, Charles, supra, 925 F.3d at 87; see Darnell, supra, 849 F.3d at 33 n.9 (noting that the same standard applies to medical and non-medical deliberate indifference).

To establish deliberate indifference under the Due Process Clause, "a plaintiff must show 'something more than mere negligence'" for the Fourteenth Amendment, Charles, supra, 925 F.3d at 87, quoting Weyant v. Okst, 101 F.3d 845, 856 (2d Cir. 1996).  Again, as reaffirmed in Charles, "'mere medical malpractice is not tantamount to deliberate indifference, but it may rise to the level of deliberate indifference when it involves culpable recklessness, i.e., an act or failure to act . . . that evinces a conscious disregard of a substantial risk of serious harm,'" id., quoting Cuoco v. Moritsugu, 222 F.3d 99, 107 (2d Cir. 2000).

> "Thus, a detainee asserting a Fourteenth Amendment claim for deliberate indifference to his medical needs can allege either that the defendants knew that failing to provide the complained of medical treatment would pose a substantial risk to his health or that the defendants should have known that failing to provide the omitted medical treatment would pose a substantial risk to the detainee's health,"

id. (emphasis in original).

D.    Qualified Immunity

When confronted by a claim of qualified immunity, one of the first questions for the Court to resolve is whether the facts, taken in the light most favorable to the party asserting the injury, show the official's conduct violated a constitutional right.  See Saucier v. Katz, 533 U.S.

194, 201 (2001). As required by the <u>Saucier</u> Court, this Court first considered the constitutional question, then considered the qualified immunity question, <u>id.</u> But the Supreme Court in <u>Pearson v. Callahan</u>, 555 U.S. 223, 236 (2009), overruled <u>Saucier</u> in requiring courts to first determine whether a constitutional violation occurred before considering whether defendants enjoy qualified immunity. Instead, district courts determine in each case whether to consider first the question of immunity or whether a constitutional violation has occurred, <u>id.</u> at 231-32.

Government officials performing discretionary functions generally are shielded by qualified immunity from liability in their individual capacities, <u>see</u> <u>Frank v. Reilin</u>, 1 F.3d 1317, 1327 (2d Cir. 1993), "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982). "If it was objectively reasonable for the defendant to believe that his act did not violate the plaintiff's constitutional rights, the defendant may nevertheless be entitled to qualified immunity." <u>Anderson v. Creighton</u>, 483 U.S. 635, 641 (1987); <u>Lowth v. Town of Cheektowaga</u>, 82 F.3d 563, 568-69 (2d Cir. 1996).

II.     Application

     A.     Applicable Constitutional Right

Since plaintiff was a jail detainee prior to any conviction, his claims regarding deliberate indifference to his medical care arises from the **Fourteenth Amendment's Due Process Clause** and not the Eighth Amendment's Cruel and Unusual Punishment Clause, <u>e.g.</u>, <u>Darnell</u>, <u>supra</u>, 849 F.3d at 29; <u>see also</u> <u>City of Revere</u>, <u>supra</u>, 463 U.S. at 244. Both parties cite to the Eighth Amendment deliberate indifference standard (Docket No. 22, Def. Memo. at 7-8; Docket No. 27, Pl. Memo. at 4, 8-9; <u>cf.</u> Docket No. 27, Pl. Memo. at 8). That does not apply here because

plaintiff has not been convicted. Prior to conviction, the Due Process Clause of the Fourteenth Amendment applies, with some variation in standards from the Eighth Amendment (as discussed above), see also Darnell, supra, 849 F.3d at 35. The Eighth Amendment focuses on punishment but there is no punishment prior to conviction. A due process violation can occur "without meting out any punishment, which means that the Due Process Clause can be violated when an official does not have subjective awareness that the official's acts (or omissions) have subjected the pretrial detainee to a substantial risk of harm," id.

> B.     Sheriff Bower's Personal Involvement

Plaintiff admits that he had no contact with Sheriff Bower during his detention (Docket No. 26, Pl. Aff. ¶¶ 2-3). Bower was not personally involved in plaintiff's medical treatment while in Orleans County Jail. In Reyes v. Beilein, No. 07CV779, 2010 U.S. Dist. LEXIS 136051, at *9-10 (W.D.N.Y. Nov. 15, 2010), adopted, 2010 U.S. Dist. LEXIS 136043 (W.D.N.Y. Dec. 23, 2010) (Arcara, J.), Magistrate Judge McCarthy found that the Niagara County Sheriff was not personally involved in plaintiff's medical treatment, either through direct participation or in a supervisory capacity. Magistrate Judge McCarthy then recommended that the sheriff there "lack[ed] sufficient personal involvement to be held liable for the alleged conduct," id. at *10, and recommended granting that sheriff summary judgment dismissing claims against him, id. at *14-15.

Plaintiff argues that Sheriff Bower remains responsible for the training (or the dearth thereof) of jail staff in failing to provide medical care (id. ¶ 3). He contends Sheriff Bower was liable for the negligence of his deputies under New York State Correction Law § 500-c(4) (Docket No. 27, Pl. Memo. at 3). Plaintiff, however, does not allege here a distinct claim that

Sheriff Bower violated that state statute or the state constitutional right of detainees to reasonable and adequate medical care (id., quoting Kagan v. State, 221 A.D.2d 7, 11, 646 N.Y.S.2d 336, 339 (2d Dep't 1996) (quotation and citation of New York cases omitted)). His claim is under federal civil rights law and violations of the United States Constitution. As such, the federal claim requires some form of personal involvement of the defendant to make them liable. "The doctrine of respondeat superior does not apply to § 1983 cases," Allah v. Poole, 506 F. Supp. 2d 174, 193 (W.D.N.Y. 2007) (Larimer, J.); Reyes, supra, 2010 U.S. Dist. LEXIS 136051, at *9.

Looking at the forms personal involvement may take, plaintiff here did not claim that Sheriff Bower had direct participation in his care (or lack of it) or that the Sheriff failed to remedy a noted violation. While claiming defendant was negligent in supervising deputies, plaintiff does not claim or establish gross negligence. The only basis for personal liability is the two policy decisions by the Sheriff to not have a nurse on duty on weekends and not having a posted policy for addressing medical situations during weekends

Similar to the plaintiff who sued the Niagara County sheriff in Reyes, 2010 U.S. Dist. LEXIS 136051, at *9-10, plaintiff here fails to show sufficient personal involvement defendant Sheriff Bower (either in direct participation or in supervision) to assert liability. On this basis, defendant Bower's motion for summary judgment dismissing claims against him (Docket No. 22) should be **granted**.

Next, this Court considers the substance of plaintiff's claims of deliberate indifference.

C.      Deliberate Indifference

Applying the objective prong for deliberate indifference under the Due Process Clause (the same standard under this clause and the Eighth Amendment Cruel and Unusual Punishment

Clause, <u>Darnell</u>, <u>supra</u>, 849 F.3d at 30), plaintiff essentially alleges two deprivation claims. First, he claims that Sheriff Bower (through his deputies) failed to treat his injuries during his arrest on September 15, 2016; second, he contends that the Sheriff failed to address in a timely manner plaintiff's hepatitis and jaundice over the weekend of October 15-16, 2016, by not having nursing staff on duty then or having proper instruction to non-medical staff to address medical situations on weekends.

    1.  Arrest Injuries

    Plaintiff did not complain of physical injuries during his processing and booking, as indicated in the booking forms (Docket No. 22, Ex. A). Plaintiff did not provide medical records supporting the various injuries that he alleges were untreated from the September 16, 2016, booking. The record contains an Albion Village Police internal report of communications surrounding plaintiff; the October 24, 2016, entry recorded a summary from a voicemail by plaintiff's mother, Caren Standish, and she and plaintiff speculated that plaintiff's dormant hepatitis may have been brought out due to "[trauma]" (Docket No. 26, Pl. Appendix, Ex. 2, at Pl. Ex. 8, at 2). There is no medical substantiation of the connection between plaintiff's September trauma and his October hospitalization for hepatitis (such as any medical follow up on testing plaintiff and Ms. Standish mentioned). Plaintiff, instead, argues about the lack of weekend nursing staff, which is addressed below.

    As for plaintiff's claimed indifference to treating his arrest-related injuries, defendant Sheriff Bower's motion for summary judgment (Docket No. 22) should be **granted**.

2. Weekend Treatment of Hepatitis

Plaintiff next contends that the 72-hours between his sick call slip complaining of jaundice and hepatitis and his admission to a hospital was deliberate indifference. Plaintiff argues that Sheriff Bower's negligence in both not having a nurse on duty over weekends (in particular the weekend of October 15, 2016) and not having a written policy for treatment of detainees on weekends results in unconstitutional punishment of plaintiff as a pretrial detainee, in violation of the Due Process Clause of the Fourteenth Amendment. (Docket No. 27, Pl. Memo. at 4, 5-6.)

The Sheriff had a duty, under the United States Constitution, see Estelle, supra, 429 U.S. at 103; Charles, supra, 925 F.3d at 81; Caiozzo, supra, 581 F.3d at 68; Darnell, supra, 849 F.3d at 29-30, 33 n.9, and New York Correction Law § 500-c (see Docket No. 22, Def. Memo. at 4-5), to provide basic medical care to detainees. Mere negligence in provision of a detainee's care or medical malpractice, however, is not sufficient to state a constitutional violation under the Due Process Clause, Charles, supra, 925 F.3d at 87. Plaintiff merely alleges here the Sheriff's negligence in inadequately staffing over the weekend or in failing to post appropriate procedures for dealing with detainees in medical distress after nursing hours.

Both sides (compare, e.g., Docket No. 22, Def. Memo. at 9, Def. with Docket No. 27, Pl. Memo. at 12-13) point to plaintiff's jail visit on October 16, 2016, as evidence of plaintiff's condition prior to being hospitalized the next day. This Court has viewed the video (Docket No. 22, Wilson Aff., Ex. L) as well as plaintiff's booking photo (id., Wilson Aff., Ex. A). Without the context of photographs of plaintiff before his incarceration, it is not clear whether he looks jaundiced or not either at his September booking or during the October visit. The

18

characterization of plaintiff's posture during the October 16 visit may raise issues of fact, but such issues may not be material. A person's condition may change or worsen over brief period of time. This Court does note that while plaintiff submitted a sick-call slip on 1:30 am Saturday, October 15, 2016 (e.g., Docket No. 26, Pl. Aff. ¶ 6), for excruciating pain (id. ¶ 19), plaintiff proceeded with a family visit on October 16 (id. ¶ 9), despite feeling "very poorly" (id. ¶ 11), and appearing in the surveillance video as listless and with yellowish skin not perceptible on the video (id. ¶ 10). Plaintiff apparently did not complain of his medical condition that day to his visiting family members and they did not report their impressions to jail officers (see Docket No. 22, Def. Statement ¶ 22). The only indications of family members raising medical concerns was his mother, Caren Standish, contacting the Orleans County Jail nurse Betsy Nesbitt about plaintiff's condition following his arrest (Docket No. 22, Def. Atty. Aff. Ex. 13, Caren Standish EBT Tr. at 23-26, 37), or Ms. Standish later informing a correctional officer about needing to observe plaintiff's physical condition (id. at 30) but this was at some undated visit. She did not testify that she had concern about plaintiff's condition during the October 16 visit. Plaintiff testified at his deposition that only his mother had reported his medical condition to the Sheriff (Docket No. 22, Def. Atty. Aff., Ex. 12, Pl. EBT Tr. at 134). Plaintiff also testified that he was brought up not to complain that "it's not the manly thing to do" (id. at 154-55).

These disputes regarding plaintiff's appearances in the booking photograph and the October 16 video are immaterial because plaintiff only alleges Sheriff Bower's negligence in not providing nursing care during that weekend and not "culpable recklessness," Charles, supra, 925 F.3d at 87, to state a constitutional violation under the Fourteenth Amendment. Thus,

defendant Sheriff Bower's motion for summary judgment on this ground (Docket No. 22) should be **granted**.

III.     Qualified Immunity

Sheriff Bower now argues that there is no clear constitutional right implicated in not having nursing staff on duty over weekends at the jail, thus he should be immune from liability (Docket No. 29, Def. Reply Memo. at 10-11), see Reichle v. Howards, 566 U.S 658, 664 (2012) (qualified immunity shields officials unless the violation is of a clearly established right at the time of the challenged conduct); Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011).  Although the Sheriff asserted qualified immunity as a defense in his Answer (Docket No. 5, ¶ 15), he raises it as an argument in support of this motion in his reply.  As a result, plaintiff has not commented on the applicability of qualified immunity for the Sheriff.

Given the recommendation above to grant his motion on the merits, this Court need not address whether Sheriff Bower also should enjoy qualified immunity if found liable.  Another reason not to address the belated invocation of qualified immunity is the fact that plaintiff has not stated his position about that immunity.

**CONCLUSION**

Based upon the above, it is recommended that defendant Sheriff Bower's motion to summary judgment (Docket No. 22) be **granted and claims against defendant Bower dismissed**.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) and W.D.N.Y. Local Civil Rule 72(b).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME OR TO REQUEST AN EXTENSION OF SUCH TIME WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT DISTRICT COURT'S ORDER ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on de novo review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72(b), "[w]ritten objections to proposed findings of fact and recommendations for disposition submitted by a Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the

basis for each objection, and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72(b) may result in the District Court's refusal to consider the objection.**

SO ORDERED.

_/s/ Hugh B. Scott_
Hon. Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
August 22, 2019